IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 SEP 28  P 1: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| VISION BIOSYSTEMS INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 05-CV-10614-GAO |
| | ) |
| | ) |
| VENTANA MEDICAL SYSTEMS, INC., | ) |
| | ) |
| Defendants. | ) |

**VISION'S OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF DOCUMENTS AND FOR
EXTENSION OF DEADLINE FOR EXPERT REPORTS**

**Introduction**

Defendant, Vision Biosystems, Inc. ("Vision"), by its attorneys, respectfully submits this

memorandum in opposition to the motion of Plaintiff, Ventana Medical System, Inc. to compel

discovery. As demonstrated below, Plaintiff's motion should be denied in its entirety. Vision

has worked diligently and expeditiously to accommodate the extremely expedited discovery

schedule in this case. Any assertion by Ventana to the contrary is unfounded..

The Court consolidated this case with Vision Biosystems, Inc. v. Ventana Medical

Systems, Inc., Civ. Action No. 03-CV-10391, on July 20, 2005. By August 10th, only three

weeks later, Vision had produced more than 75,000 pages of documents to Ventana, a task made

all the more difficult due to the fact that the documents were located in Australia. In contrast,

Ventana has provided Vision with less than 10,000 pages of documents. The parties have each

served numerous requests for documents, interrogatories, requests for admissions. Vision has

fully responded to Ventana's extraordinarily broad discovery requests, providing information in

the most efficient and timely manner as possible. Vision accommodated Ventana's schedule by bringing its corporate designees to the United States for deposition. In the past three weeks, Vision has participated in at least ten depositions in locations all over the United States including Massachusetts, Arizona, New York and California. After receiving yet further demands for the depositions of marginally relevant witnesses, Vision agreed to make those witnesses available for deposition in Australia, on an expedited basis. Ventana canceled those depositions at the last minute.

Ventana's counsel failed to conduct a meet and confer with Vision's counsel on most of the documents addressed in its motion. As a consequence, the Court's time is unnecessarily consumed by dealing with these issues. Moreover, many of the documents addressed in Ventana's motion were identified for the first time during recent depositions, including during a deposition that took place on the west coast the same day Ventana filed its motion in this Court. Some of Ventana's requests seek information that has already been provided to Ventana in a different form and others address documents that Vision has agreed to produce. Vision's counsel did not even have an opportunity to confer with its client before Ventana brought its spurious motion. If counsel for Ventana had conducted the required meet and confer with respect to each of the categories of documents raised in its motion, many of the issues raised in the motion would have been easily resolved without this Court's intervention.

Vision has addressed and has attempted to resolve each and every issue raised by Ventana during the discovery period. As explained below, Ventana's motion to compel without fulfillment of the procedural requirements is unjustified and should be denied in its entirety.

**1.    Source Code**

On August 11, 2005, in response to Ventana's document request, Vision produced its source code in written form. It should be emphasized that, while Ventana demanded and received the source code for the entire software driving Vision's Bond™ instruments, the vast majority of that source code has nothing whatsoever to do with any issue of this case. The patent claims at issues are directed to slide-staining methods that employ bar code identifiers for slides and reagents. Most of the software is directed to instrument functions that are not in dispute and that have nothing to do with the bar code or optical character recognition technologies that are at issue. Ventana's complaint that the source code is voluminous is without merit. Ventana received what it requested. Not only has Ventana had the source code for more than a month, it also had the opportunity, both by written discovery and depositions of the knowledgeable Vision witnesses to obtain identification of those parts of the source code that are relevant to the issues of this case. Ventana chose not to do so and now lays the blame on Vision that it has received voluminous materials.

On August 15, Ventana requested that Vision produce electronic copies of the code. Vision's counsel responded the next day by copying the CDs produced by its client. These are the electronically readable media containing all of the software that is installed on the Bond™ instruments in customers' facilities. (See letter of Elizabeth A. Leff dated August 16, 2005, Ex A to the Declaration of C. Nichole Gifford ("Gifford Decl.") submitted herewith). At the time, Vision's counsel did not realize that Ventana was requesting something different.

On August 25, counsel met and conferred concerning the issue of the source code. Ventana's counsel explained that it was seeking CDs of the source code that are capable of being searched electronically. Counsel for Vision explained the highly sensitive and proprietary nature of source code in that format and inquired of counsel for Ventana what Ventana wanted to do

with the source code. Ventana's counsel indicated that Ventana wanted to use a program to compare the code of the Bond system which used OCR with the Bond system that used bar codes on slides. Such a program would create so-called "diff files" files which show the differences between the codes. Ventana's counsel suggested that if Vision could produce the "diff files," that would satisfy Ventana's need for information. Vision's counsel requested Vision to create the diff files. These CDs were sent to counsel for Ventana on September 2, 2005. (See letter of Elizabeth A. Leff dated September 2, 2005, Gifford Decl. Ex. B). It was not until the following week that Ventana's counsel alleged that the "diff files" were not sufficient for Ventana's purposes. The parties then began negotiating the terms on which the source code could be provided.

During a meet and confer on September 19, 2005, the idea of making the source code available to Ventana's expert in Vision's Boston office was raised. Counsel for Vision stated that Vision would have to be consulted to determine if the details could be worked out.

On September 21, 2005, while counsel for Vision was defending a deposition in this matter, Ventana's counsel sent an e-mail stating that if she did not receive a response as to the availability of the source code in two hours, Ventana would seek the Court's assistance. Vision's counsel did not even see this e-mail until after the motion to compel had been filed.

This was not a matter of Vision's refusing to provide Ventana with discovery. Vision's counsel has assiduously tried to work out a procedure in which Vision would feel comfortable that its proprietary source code was properly protected, and Ventana would obtain the information it requested. In August, Ventana's counsel stated that the production of "diff files" would be sufficient. One month later, it determined such files were not sufficient.

Ventana's argument that it requested the source code on August 16 and has essentially been "stonewalled" by Vision is extremely misleading. As is apparent from the above

4

descriptions, Vision promptly provided Ventana with its source code in written form. Vision then promptly provided the "diff files" pursuant to the agreement between the parties. Ventana's specious suggestion that these "diff files" were somehow intentionally created as large files that Ventana allegedly cannot open on its computers is hardly deserving of a response. Vision created these files as a good faith response to Ventana's request using commercially available software packages. Vision cannot explain Ventana's inability to open the files because Ventana has chosen not to provide any details about the problem it is having other than indicating that the files are too large. Vision has suggested that Ventana use a computer with a larger memory capacity to open the files, but Ventana has not made any effort to resolve the problem with Vision.

The Court should understand that the source code of commercial software such as that used in Vision's Bond™ instruments is extremely sensitive and proprietary information. It is the basic software instruction that has been created at great cost and expense. It can be copied, and features manipulated or used without detection. Once it is made available electronically, it can be easily and quickly copied and widely disseminated either intentionally or inadvertently and it is very difficult or impossible for the creator of the source code to monitor or even be aware of these acts.

The vast majority of the source code that Ventana seeks, while highly valuable, is irrelevant to any issues of this case. Indeed, the software at issue -- i.e., that which deciphers the OCR symbology -- is not software that was created by Vision. It was obtained from a commercial licensor in Germany and Vision does not possess its source code. Indeed, Vision is only a licensee, and the German vendor retains ownership of the software. After receiving Ventana's motion, Vision asked the German licensor whether it could provide the source code.

Not surprisingly, it declined. In response to Vision's request, Vision's licensor has provided reports describing the function of its software. These reports are being produced to Ventana.

Notwithstanding the foregoing, Vision is willing to make the requested Bond™ software source code available electronically on the conditions proposed by Ventana. (See Michaelis Decl. Ex. 13). It will do so early in the week of October 2, 2005. Namely, Vision will provide a Ventana expert who has agreed to abide by the Court's protective order with a computer loaded with the requested source code at Vision's facility in Massachusetts. Ventana's expert may use his own software tools to analyze the software. The computer will be equipped with a printer, so that he can print whatever reports he creates, and he may make notes. We earnestly request, however, that the Court order that no electronic copies of any part of the source code may be electronically copied or transmitted to any other computer or electronic device without Vision's consent or order of this Court upon good cause shown. We also request that the Ventana expert be ordered to retain all copies of reports and notes and analytical tools that he uses, so that Vision will have ample opportunity to examine him thoroughly concerning his analysis. Vision also requests that it be permitted to have a software specialist present during Ventana's expert's analysis of the Vision source code.

## 2.    All Service and User Manuals

Vision has not refused to produce service and user manuals nor has it ever denied the existence of a manual. To date, Vision has produced two versions of the service manual, five versions of the user manual and two addenda to the user manual. In response to Ventana's document requests Vision made a good faith search and produced over 75,000 pages of documents. Vision is required to make a good faith search of its documents, not read through each produced document to insure that every document referenced in a produced document was located. Ventana has requested versions of the manuals that were not located during the search

6

but which were referenced in documents that Vision produced. Vision has attempted to locate and produce each version of the manuals requested by Ventana as expeditiously as possible. For example, Vision's counsel received a copy of the non-draft service manual on September 21. Rather than send it by overnight delivery, counsel set up a computer site so that Ventana's attorneys could obtain the manual that day. Paper copies were provided to Ventana's counsel the next day. Vision has already provided to Ventana the Bond Service Manual with readable substantive comments as requested in Ventana's motion.

With respect to the manuals in Michaelis Decl. Exs. 14 and 15, Ventana first requested those manuals at the deposition of Lloyd Stedman which took place on the same day Ventana filed this motion. Indeed, as the deposition took place on the west coast, Ventana actually filed the motion before it even requested Vision to produce the documents, before there was any opportunity to meet and confer and before Vision had an opportunity to discuss Ventana's request with its client (who is in a 14-hour different time zone).

## 3.    Bond Installation and Documentation CDs and Customer Release Notes

Ventana first advised Vision that it did not have the Bond installation and document CDs and the customer release notes at Lloyd Stedman's deposition on September 21, 2005. There was no meet and confer held relating to these documents and Ventana never gave Vision a chance to produce them after it requested the documents. Indeed, because of the difference in time zones, it is likely Ventana first advised Vision that these documents had not been produced after it moved to compel their production. These documents and CDs will be produced by the end of business September 27, less than a week after they were first requested.

## 4.    Documents Received from Jadak Regarding Jadak's FM-204 Imager Used in the Bond OCR

It is not true, as Ventana recklessly alleges, that "Vision has failed to produce any documents received from Jadak regarding that imager." Vision produced e-mail correspondence between it and Jadak. See for example documents bates numbered VBS-OCR 43197-204, 43207-221, 43228-234, 43254-260, 43262-274, 43300-304, 43319-327. What Vision did not produce were Jadak user or operators manuals. Vision searched several times for copies of these manuals but paper copies were not located. It is likely that, to the extent that Vision employees used these manuals at all, they used electronic versions and simply accessed them when needed. Vision's counsel informed Ventana's counsel, Mr. Danis and Ms. Stafford, this was a possibility in a conversation on September 15, 2005. Feigning prejudice resulting from Vision's not producing documents allegedly in its possession, Ventana does not inform the Court that it has already obtained these documents directly from Jadak. Vision's counsel has asked its client once again promptly to search for any Jadak manuals that it possesses in either paper or electronic format. If any are found, they will be produced.

## 5.    Documents Showing US and International Customer Satisfaction or Dissatisfaction with the Bond OCR

Vision does not believe documents in this category are responsive to any of Ventana's document requests with the possible exception of Request No. 22. However, because Request No. 22 related to customer use, the parties had agreed to forgo discovery on it pending the negotiation of a customer use stipulation. See Michaelis Decl. Ex. 8.

Ventana first requested documents relating to "US and international dissatisfaction with the Bond OCR" in a letter dated September 16, 2005. See Michaelis Decl. Ex. 12. During the meet and confer on September 19, 2005, Vision's counsel stated that the reports from the facility in the U.K. referred to by Mr. Sorenson during his deposition would be produced that day. In a responsive e-mail dated September 20, 2005, Ms. Stafford stated "[p]lease also clarify that the

documents regarding the Norwich facility are complete and include all documents regarding the service/operation of that facility or any other facilities operating the Bond OCR in bar code reader mode or supplement Vision's production in that regard." Michaelis Decl. Ex. 13. It was Vision's understanding that what Ventana requested was documents relating to service/operation of facilities operating Bond OCR with a bar code on the slides - not as requested in its motion to compel, documents relating to all facilities. Vision's counsel responded the next day that the documents produced were the only ones relating to the Bond-OCR service/operation in the two facilities that used bar codes on slide labels. See Michaelis Decl. Ex. 13. Ventana now moves to compel a much larger universe of documents relating to customer dissatisfaction. Ventana's motion is the first time such documents have been requested.

Despite the questionable responsiveness to Ventana's document requests, Vision has produced all reports relating to customer problems to the extent they have been located after a good faith search.

## 6. Software Verification Reports

Ventana first requested software verification reports in a letter dated September 16, 2005, one week prior to the close of discovery. See Michaelis Decl. Ex. 12. These reports were not discussed during the meet and confer held on September 19, 2005 and therefore is not properly before the Court. See Michaelis Decl. Ex. 13 at p. 4.

## 7. Information Regarding Privileged Documents

Documents withheld on the basis of privilege were never the subject of a meet and confer and is therefore not properly before the Court. Vision has responded to the issues raised by Ventana regarding its privilege log by separate letter. See Gifford Decl. Ex. C.

## 8. Omitted Information in Response to Interrogatory No. 7

9

In its review of documents Ventana has picked up the names of individuals with little

involvement in the Bond OCR project and on that basis complained that Vision has not fully

responded to Interrogatory No. 7. Vision listed over 40 people in response to Interrogatory No. 7

(a fact about which Ventana complained in a letter dated August 18, 2005). Vision has,

however, responded to Ventana's request and provided the requested information on the

individuals named in Ms. Stafford's letter of September 2, 2005.

## Conclusion

Vision has produced requested documents and things as expeditiously as possible. For this

reason and Ventana's failure to comply with its meet and confer obligations, Ventana's motion to

compel and for an extension of time to file expert reports should be denied.

Dated: September 28, 2005                    Respectfully submitted,

                                             By:  /s/ Christine M. Roach
                                             Christine M. Roach BBO # 421630
                                             ROACH & CARPENTER PC
                                             24 School Street
                                             Boston, Massachusetts 02108
                                             (617) 720-1800

                                             E. Anthony Figg (admitted *pro hac vice*)
                                             Elizabeth A. Leff (admitted *pro hac vice*)
                                             C. Nicole Gifford (admitted *pro hac vice*)
                                             Richard Wydeven (admitted *pro hac vice*)
                                             ROTHWELL, FIGG, ERNST & MANBECK
                                             1425 K Street, NW, Suite 800
                                             Washington, DC 20005
                                             (202) 783-6040

10

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2005, I caused a true and correct copy of the foregoing to be served upon the following counsel of record, by first class mail, postage prepaid, or as otherwise indicated

Brian L. Gallagher

Roger J. Chin, Esq.
Nichole Stafford, Esq.
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, CA 94304-1050
**(BY FAX)**

Brian L. Michaelis, Esq.
Brown Rudnick Berlack Israels, LLP
One Financial Center
Boston, MA 02111
**(BY MESSENGER)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VENTANA MEDICAL SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-10614-GAO |
| ) | |
| ) | |
| VISION BIOSYSTEMS (USA) ) | |
| TRADING INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DECLARATION OF C. NICHOLE GIFFORD

I, C. Nichole Gifford, DECLARE AS FOLLOWS:

1.      I am an attorney with the law firm of Rothwell, Figg, Ernst & Manbeck, 1425 K Street NW, Washington, DC 20005, counsel to Defendant Vision BioSystems, Inc. ("Vision") in the above-captioned action. All of the matters set forth in this Declaration are within my personal knowledge.

2.      This declaration is submitted for the purpose of putting before the Court certain documents in connection with Vision's Opposition to Ventana's Motion to Compel Production of Documents and for Extension of Deadline for Expert Reports.

3.      Attached hereto as Exhibit A is a true and correct copy of a letter from Elizabeth A. Leff to Nichole Stafford dated August 16, 2005.

4.      Attached hereto as Exhibit B is a true and correct copy of a letter from Elizabeth A. Leff to Nicole Stafford dated September 2, 2005.

5.      Attached hereto as Exhibit C is a true and correct copy of a letter from C. Nichole Gifford to Nicole Stafford dated September 28, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed this 28th day of September, 2005, in Washington, District of Columbia.

C. Nichole Gifford

2



ROTHWELL, FIGG, ERNST & MANBECK, P.C.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

August 16, 2005

*Via Facsimile*

Nicole Stafford, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360
Suite 3350
Austin, Texas 78759-8497

G. Franklin Rothwell
E. Anthony Figg
Barbara G. Ernst
Harry F. Manbeck, Jr.
George R. Repper
Steven Lieberman
Joseph A. Hynds
Elizabeth A. Leff
Richard Wydeven
Martin M. Zoltick
Minaksi Bhatt
Sharon L. Davis
Robert B. Murray
Carla C. Calcagno
Jeffrey L. Ihnen
Glenn E. Karta

Martha Cassidy, Ph.D.
Thomas E. McKiernan
Anne M. Sterba
Lisa N. Phillips
Leigh Z. Callander
C. Nichole Gifford
Patrick T. Skacel
Brian S. Rosenbloom
Monica C. Kitts
Brian A. Tollefson
Joo Mee Kim*
Steven M. Giovannetti
Hyunkweon Ryu
R. Elizabeth Brenner
Adam M. Treiber

*Not Admitted in D.C.

Of Counsel
John A. McCahill
Barbara Webb Walker, Ph.D.

Re:    Ventana Medical Systems, Inc. v. Vision BioSystems Inc.
       District of Mass. 05-CV-10614-GAO
       Our Ref.: 2961-102

Dear Nicole:

This will respond to your letter of last night regarding your request that Vision provide machine readable electronic copies of the source code identified in your letter. We are currently having a DVD/CD created with the source code documents you have identified. The DVD/CD will be available tomorrow morning and we will send it to you by Federal Express tomorrow. If you have any questions please give me a call.

Very truly yours,

Elizabeth A. Leff

EAL:whc
Stafford.L04.wpd

 ROTHWELL, FIGG, ERNST & MANBECK, P.C.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

G. Franklin Rothwell
E. Anthony Figg
Barbara C. Ernst
Harry F. Manbeck, Jr.
George R. Repper
Steven Lieberman
Joseph A. Hynds
Elizabeth A. Leff
Richard Wydeven
Martin M. Zoltick
Minaksi Bhatt
Sharon L. Davis
Robert B. Murray
Carla C. Calcagno
Jeffrey L. Ihnen
Glenn E. Karta

Martha Cassidy, Ph.D.
Thomas E. McKiernan
Anne M. Sterba
Lisa N. Phillips
Leigh Z. Callander
C. Nichole Gifford
Patrick T. Skacel
Brian S. Rosenbloom
Monica C. Kitts
Brian A. Tollefson
Joo Mee Kim*
Steven M. Giovannetti
Hyunkweon Ryu
R. Elizabeth Brenner
Adam M. Treiber

*Not Admitted in D.C.

Of Counsel
John A. McCahill
Barbara Webb Walker, Ph.D.

September 2, 2005

*Via Federal Express*

Nicole Stafford, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360
Suite 3350
Austin, Texas 78759-8497

Re:    Ventana Medical Systems, Inc. v. Vision BioSystems Inc.
       District of Mass. 05-CV-10614-GAO
       Our Ref.: 2961-102.

Dear Nicole:

This responds to some of the issues raised in your letter of yesterday. I will respond to the remaining issues shortly.

I enclose a CD of diff files of the source code. One file shows the differences between the Bond which used slide bar codes and the Bond-OCR 03.02.07. The other file shows the differences between Bond-OCR 02.03.07 and Bond-OCR 03.03.03.

I received your proposed draft of the customer use stipulation this afternoon. As I said in my telephone message it contains inaccuracies to which Vision cannot agree. Perhaps we can discuss this next week.

Mr. Timbs and Mr. Zawadski are not employees of Vision or Invetech. They are independent contractors. Therefore, Vision is unable to produce them.

ROTHWELL, FIGG, ERNST & MANBECK, P.C.

Nicole Stafford, Esq.
September 2, 2005
Page 2

Although we continue to disagree with the relevance of topic no. 9 and do not believe that the case law you cite supports your proposition that the utility and advantages of Bond-OCR 03.02.07 and the Bond-OCR 03.03.03 is relevant, Vision designates Ross Barrow to testify on behalf of the company on the utility and advantages of the Bond-OCR 03.02.07 and the Bond - OCR 03.03.03 as compared to the Bond with bar code capability.

I enclose a letter with an explanation of the gaps and redactions referred to in your letter of August 18, 2005. As that letter indicates, we propose exchanging privilege logs on September 9, 2005.

I enclose a verified interrogatory response.

Please provide me with dates for the inventor depositions as soon as possible. I estimate that each of the inventors will take approximately half a day.

Very truly yours,

Elizabeth A. Leff

EAL:whc
encs.
Stafford.L20.wpd



ROTHWELL, FIGG, ERNST & MANBECK, P.C.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

G. Franklin Rothwell
E. Anthony Figg
Barbara G. Ernst
Harry F. Manbeck, Jr.
George R. Repper
Steven Lieberman
Joseph A. Hynds
Elizabeth A. Leff
Richard Wydeven
Martin M. Zoltick
Minaksi Bhatt
Sharon L. Davis
Robert B. Murray
Carla C. Calcagno
Jeffrey L. Ihnen
Glenn E. Karta

Martha Cassidy, Ph.D.
Thomas E. McKiernan
Anne M. Sterba
Lisa N. Phillips
Leigh Z. Callander
C. Nichole Gifford
Patrick T. Skacel
Brian S. Rosenbloom
Monica C. Kitts
Brian A. Tollefson
Joo Mee Kim*
Steven M. Giovannetti
Hyunkweon Ryu
R. Elizabeth Brenner
Adam M. Treiber

*Not Admitted in D.C.

Of Counsel
John A. McCahill
Barbara Webb Walker, Ph.D.

September 28, 2005

**Via Facsimile**

Nicole Stafford, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360
Suite 3350
Austin, Texas 78759-8497

> Re:   Ventana Medical Systems, Inc. v. Vision BioSystems Inc.
>        District of Mass. 05-CV-10614-GAO
>        Our Ref.: 2961-102

Dear Nicole:

In response to your letter of September 14, 2005, all of the documents from Vision's privilege log were properly withheld on the basis of privilege. Whether a particular document was written by or sent directly to an attorney is not the sole basis for determining the applicability of attorney-client privilege or attorney work product. I'm sure you understand that if a person gathers information at the request of counsel, such information is privileged even if not directly communicated to counsel. For example, if the president of the company has a conversation with counsel, and as a result of that conversation counsel asks for additional information, the president of the company could ask the vice president to gather the information. The vice president could then ask an engineer for the information. The communication from the engineer to the vice president or from the vice president to the president would be privileged despite the fact that it was not sent directly to or from an attorney. Federal Rule of Civil Procedure 26(b)(3) defines materials protected by the work product doctrine as "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for the other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." *See* FED. R. CIV. PROC. 26(b)(3).

Given the numerous other circumstances where documents not sent to or from counsel would be privileged, I believe that the descriptions of the documents on the log are sufficient to

ROTHWELL, FIGG, ERNST & MANBECK, P.C.

Nicole Stafford, Esq.
September 28, 2005
Page 2

establish Vision's right to withhold each of the documents identified in your letter. Our
descriptions certainly provide more information than those Ventana provided to Vision.
Nevertheless, I provide additional information for each of the documents identified in your letter
below.

The 8/9/04 entry from Stuart Elliott reflects Mr. Elliott's notes to himself which he
recorded for the purpose of seeking legal advice from counsel. The fact that Mr. Elliott sent the
e-mail to himself and had an oral discussion with counsel regarding the contents rather than
sending the e-mail directly to counsel does not eliminate the privileged nature of the document.

The 10/6/04 entry from Paul Sorenson to Ross Barrow is an e-mail whereby Mr.
Sorenson is providing information to Mr. Barrow that was gathered at the request of Mr. Martin.
The e-mail is protected by attorney work product immunity and attorney-client privilege.

The 10/6/04 entry from Paul Sorenson to Chris Zawadski is an e-mail from Mr. Sorenson
to Mr. Zawadski providing information that was gathered at the request of Mr. Martin. The e-
mail is protected by attorney work product immunity. We do not agree with your assertion that
the disclosure of information to a contract employee who shares a common interest with Vision
waives privilege. The District of Massachusetts has previously recognized that:

> The work product privilege does not exist to protect a confidential
> relationship, but rather to promote the adversary system by safeguarding
> the fruits of an attorney's trial preparations from the discovery attempts of
> the opponent. The purpose of the work product privilege is to protect
> information against opposing parties, rather than against all others outside
> a particular confidential relationship, in order to encourage effective trial
> preparation . . . A disclosure made in the pursuit of such trial preparation,
> and not inconsistent with maintaining secrecy against opponents should be
> allowed without waiver of the privilege. In determining whether a
> disclosure is fatally inconsistent with maintaining the privilege, the
> existence of "common interests" between the transferor and transferee
> should be considered. Most courts have held that disclosure of a
> document to third persons does not waive the protection unless it has
> substantially increased the opportunities for potential adversaries to obtain
> the information. (Internal citations omitted)

*See In re Raytheon Securities Litigation*, 218 F.R.D. 354, 359-60 (D. Mass. 2003).

The 10/7/04 entry from Michael Ohanessian to Dave Autry et al. is an e-mail from Mr.
Ohanessian to specific VBS employees in the United States providing information on the current
litigation and containing legal advice received from counsel about the litigation. The disclosure

ROTHWELL, FIGG, ERNST & MANBECK, P.C.

Nicole Stafford, Esq.
September 28, 2005
Page 3

of such information to VBS employees does not waive the attorney-client privilege.

The 10/7/04 entry from Michael Ohanessian to VBS Staff is an e-mail from Mr. Ohannessian to the VBS staff providing information on the current litigation and containing legal advice received from counsel about the litigation. The disclosure of such information to VBS employees does not waive the attorney-client privilege.

The 10/11/04 entry from Matt Pini to Stuart Elliott is an e-mail whereby Mr. Pini is providing information to Mr. Elliott at Mr. Martin's request. You will note that Mr. Martin is copied on this e-mail. The e-mail is protected by attorney work product immunity.

The 10/11/04 entry from Matt Pini to Damon Henshaw is an e-mail with a 4-page attachment whereby Mr. Pini is summarizing information for Mr. Henshaw for the purpose of seeking legal advice related to a patent application. Mr. Henshaw is an attorney, and you will note that Mr. Martin is also copied on this e-mail.

The 12/11/04 entry from Joanne Ferrell to Stuart Elliott is and e-mail with a 2-page attachment providing information to Mr. Elliott related to a patent search. However, upon closer examination, it is apparent that contents are not related to the use of bar codes or OCR technology and therefore are not responsive to Ventana's document requests. This entry should therefore be removed from Vision's privilege log.

The 3/23/05 entry from Anthony White to Eduardo Vom et al. is an e-mail summarizing information for the purpose of seeking legal advice. You will note that Mr. Martin is copied on the e-mail, and questions contained therein specifically seek Mr. Martin's legal advice. The fact that other VBS employees are also recipients of the e-mail does not waive the privilege.

If you have any other questions, please do not hesitate to contact me.

Very truly yours,

C. Nichole Gifford

CNG:erh

Stafford.L33.wpd