# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VISION BIOSYSTEMS (USA) TRADING, INC.,

      Plaintiff,

v.

VENTANA MEDICAL SYSTEMS, INC.,

      Defendant.

CIVIL ACTION NO. 03-CV-10391-GAO

VENTANA MEDICAL SYSTEMS, INC.

      Plaintiff,

v.

VISION BIOSYSTEMS, INC.,

      Defendant.

CIVIL ACTION NO. 05-CV-10614-GAO

**DEFENDANT VENTANA MEDICAL SYSTEMS, INC.'S MEMORANDUM
IN OPPOSITION TO VISION'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT BASED ON COLLATERAL ESTOPPEL**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND FACTS ................................................................................... 2

III.   VISION'S MOTION SHOULD BE DENIED BECAUSE
COLLATERAL ESTOPPEL DOES NOT APPLY ......................................... 5

    A.    Collateral Estoppel Is Inappropriate Pending
Appeal of the Arizona *Markman* Ruling ............................................. 5

    B.    Collateral Estoppel Is Inappropriate Because the
Arizona *Markman* Ruling Is Plainly Wrong ....................................... 7

        1.    The Language of the Claims .................................................... 8

        2.    The Patent Specification ......................................................... 9

        3.    The Prosecution History ....................................................... 11

IV.   ALTERNATIVELY, VISION'S MOTION
SHOULD BE DENIED AS PREMATURE ................................................... 12

    A.    Legal Standards for Denying Summary Judgment ............................... 15

    B.    Summary Judgment Should Be Deferred to Avoid
a Judgment that Conflicts with the Federal Circuit ............................. 15

    C.    Summary Judgment Should Be
Deferred to Protect the Parties' Interests ............................................ 16

V.    CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acton Corp. v. Borden, Inc.,*
  670 F.2d 377 (1st Cir. 1982) ............................................................................15

*Anderson v. Hodel,*
  899 F.2d 766 (9th Cir. 1990) ..........................................................................15

*Cybor Corp. v. FAS Techs., Inc.,*
  138 F.3d 1448 (Fed. Cir. 1998)........................................................................5, 6

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.,*
  34 F.3d 1048 (Fed. Cir. 1994).........................................................................10

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
  355 F.3d 1327 (Fed. Cir. 2004).....................................................................11, 12

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.,*
  175 F.3d 985 (Fed. Cir. 1999).........................................................................8

*Kennedy v. Silas Mason Co.,*
  334 U.S. 249 (1948)........................................................................................15

*Kollmorgen Corp. v. Yaskawa Elec. Corp.,*
  147 F. Supp. 2d 464 (W.D. Va. 2001) ............................................................4, 6

*Landis v. North Am. Co.,*
  299 U.S. 248 (1936).......................................................................................15

*Landrau-Romero v. Banco Popular de Puerto Rico,*
  212 F.3d 607 (1st Cir. 2000).........................................................................17

*In re Laventhol & Horwath,*
  139 B.R. 109 (S.D.N.Y. 1992).........................................................................5

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 898 (Fed. Cir. 2004).........................................................................9

*Micron Tech., Inc., v. Rambus Inc.,*
  189 F. Supp. 2d 201 (D. Del. 2002)........................................................ *passim*

*Monsanto Co. v. Aventis Cropscience SA*,
        No. 00-1013-SLR, 2001 WL 640969
        (D. Del. May 16, 2001) ...................................................................................14

*Moore N. Am., Inc. v. Adams Inv. Co.*,
        No. 99-CV-90376, 2000 U.S. Dist. LEXIS 20958
        (S.D. Iowa July 27, 2000) ............................................................................6, 13

*Moore U.S.A., Inc. v. Standard Register Co.*,
        229 F.3d 1091 (Fed. Cir. 2000) .....................................................................13

*Morton Int'l, Inc. v. Atochem N. Am., Inc.*,
        No. 87-60-CMW, 1991 WL 98609
        (D. Del. April 26, 1991) ...............................................................................14

*Nazomi Communs., Inc. v. ARM Holdings, PLC*,
        403 F.3d 1364 (Fed. Cir. 2005) .......................................................................5

*Phillips v. AWH Corp.*,
        415 F.3d 1303 (Fed. Cir. 2005) .....................................................................12

*Rambus Inc. v. Infineon Techs. AG*,
        318 F.3d 1081 (Fed. Cir. 2003) ...................................................................2, 14

*Renishaw PLC v. Marposs Societa per Azioni*,
        158 F.3d 1243 (Fed. Cir. 1998) .......................................................................8

*Resonate Inc. v. Alteon WebSystems, Inc.*,
        338 F.3d 1360 (Fed. Cir. 2003) .....................................................................10

*Rodime PLC v. Seagate Tech., Inc.*,
        174 F.3d 1294 (Fed. Cir. 1999) .....................................................................10

*Schwartz v. Upper Deck Co.*,
        967 F. Supp. 405 (S.D. Cal. 1997) ................................................................18

*SunRace Roots Enter. Co. v. SRAM Corp.*,
        336 F.3d 1298 (Fed. Cir. 2003) ...................................................................9, 11

*SunTiger, Inc. v. Scientific Research Funding Group*,
        189 F.3d 1327 (Fed. Cir. 1999) .....................................................................15

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
        299 F.3d 1313 (Fed. Cir. 2002) .......................................................................8

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*,
        No. 01 Civ. 1044, 2005 WL 912184
        (S.D.N.Y. April 19, 2005) .............................................................................14

## RULES

Fed. R. App. P. 31(a)(1)................................................................................................16

Fed. Cir. R. 31(a)(2)....................................................................................................16

## OTHER AUTHORITIES

1B James W. Moore, Moore's Federal Practice ¶ 0.416 (2d ed. 1996)...................................5

Restatement (Second) of Judgments § 13 (2005) ..............................................6, 7

Restatement (Second) of Judgments § 16 (2005) ............................................1, 13

Restatement (Second) of Judgments § 29 (2005) ............................................7, 18

10A Charles A. Wright et al., Federal Practice
    and Procedure § 2728 (3d ed. 1998) ........................................................15

18A Charles A. Wright et al., Federal Practice
    and Procedure § 4433 (2d ed. 2002) ........................................................16

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| Ventana | Defendant Ventana Medical Systems, Inc. |
| Vision | Plaintiff Vision BioSystems (USA) Trading, Inc. |
| '861 patent | U.S. Patent No. 6,352,861 |
| 03-D.I. | Docket item in Case No. 03-CV-10391-GAO |
| 05-D.I. | Docket item in Case No. 05-CV-10614-GAO |
| Ex. | The corresponding exhibit to the Declaration of Roger J. Chin in Support of Ventana's Opposition to Vision's Motion for Summary Judgment of Non-Infringement Based on Collateral Estoppel, filed concurrently herewith |
| Pl. Memo. | Plaintiff's Memorandum in Support of its Motion for Summary Judgment of Noninfringement Based on Collateral Estoppel, filed October 7, 2005 |

## I.    INTRODUCTION

Vision wants this Court to adopt, as its own, a flawed order from the Arizona court that is the subject of an ongoing appeal to the Federal Circuit. The Arizona court imposed a claim construction that, on its face, does not square with the ordinary meaning of the claim language at issue. In fact, it is so at odds with established law that Vision did not even have the temerity to advance the same argument to this Court when the issue of infringement was litigated last year.

The order from the Arizona court is not sufficiently firm and stable to be accorded collateral estoppel effect. It is currently on appeal before the Federal Circuit, and is being reviewed on a *de novo* basis. As a matter of law, the Federal Circuit gives no deference whatsoever to the Arizona court's decision. Likewise, this Court should not adopt the Arizona court's decision without first having a settled record from the Federal Circuit.

Vision's motion is an invitation into a procedural minefield following resolution of the appeal of the Arizona action. If judgment were entered at this time, the Court will be faced with the prospect of having based its judgment on a decision that may soon be reversed by the Federal Circuit. Under such circumstances, even if collateral estoppel were technically permissible, "it may still be advisable for the court that is being asked to apply the judgment as res judicata to stay its own proceedings to await the ultimate disposition of the judgment in the trial court or on appeal." RESTATEMENT (SECOND) OF JUDGMENTS § 16 cmt. b (2005).

Other courts that have faced the same issue have taken heed of the RESTATEMENT's advice and deferred ruling on collateral estoppel pending appeal of another court's *Markman* ruling. For example, Judge McKelvie of the District of Delaware stayed consideration of collateral estoppel pending resolution of an appeal of a Virginia court's *Markman* ruling. He explained that "awaiting the Federal Circuit's opinion appears both prudent and efficient," because "the Federal Circuit might reverse the claim construction of the Virginia court shortly

after this court grants summary judgment of non-infringement based on applying that construction." *Micron Tech., Inc., v. Rambus Inc.*, 189 F. Supp. 2d 201, 211 (D. Del. 2002). Judge McKelvie's warning was prescient, because the Federal Circuit ultimately determined that the Virginia court "erred in its construction of each of the disputed terms." *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1095 (Fed. Cir. 2003). Other courts have adopted the prudent approach taken by Judge McKelvie. *See* section IV, *infra*. There is no reason for this Court to deviate from this accepted course of action.

Resolution of the pending appeal will provide this Court with a reliable construction of the relevant claim language. Until then, application of collateral estoppel is improper, and therefore, Vision's motion for summary judgment should be denied.

## II.    BACKGROUND FACTS

In this case, Ventana has asserted the '861 patent against Vision. The issue of infringement was extensively briefed by the parties and argued to the Court. On September 30, 2004, the Court issued a Memorandum and Order, finding that Vision's Bond system infringes claims 1 and 5 of the '861 patent. *See* 03-D.I. 103.

The issue of infringement having been resolved, a trial on the issue of validity was scheduled for July 2005. *See* Hr'g Tr. at 22:2-3 (Jan. 12, 2005) (03-D.I. 107). Due to a scheduling conflict, however, the trial was continued to November 2005. In the meantime, Vision released a new, infringing product known as the Bond OCR. *Id.* at 4:3-7. As Vision's counsel explained, the Bond OCR "differs only by the removal of the [slide] bar code." *Id.* at 7:9-10. A second lawsuit was filed, which was consolidated with the first for trial in November 2005. *See* Hr'g Tr. at 5:10-19 (July 20, 2005) (03-D.I. 126).

The '861 patent was also asserted by Ventana against BioGenex Laboratories in the District of Arizona. While the parties were preparing for trial in the present case, the Arizona

court issued a claim construction order ("Arizona *Markman* Ruling") that construed the "dispensing" limitation of the '861 patent to require "direct dispensing." Ex. A at 16. BioGenex admitted that its accused devices performed "dispensing" but denied that they performed "direct dispensing." In order to expedite appellate review of the Arizona *Markman* Ruling, Ventana stipulated to an appealable judgment of noninfringement in the Arizona action based on the court's construction of the "dispensing" limitation. Ex. B. Judgment was entered, Ex. C, and a Notice of Appeal was filed shortly thereafter. Ex. D. Accordingly, the Federal Circuit is currently reviewing the Arizona *Markman* Ruling as a purely legal question on a *de novo* basis. No deference is given to the decision reached by the Arizona court.

The "dispensing" argument at issue in the Arizona action was never raised by Vision as a noninfringement defense. Vision certainly had a fair opportunity to do so. Ventana's cross-motion for summary judgment, in January 2004, provided a detailed description of how Vision's products perform the step of "dispensing." *See, e.g.*, Mem. Supp. Def.'s Cross-Mot. Summ. J., App. A, at 5-6 & 19 (Jan. 15, 2004) (03-D.I. 64). Vision agreed "that during operation of the Bond™ System reagents are dispensed onto slides." Pl.'s Resp. Def.'s Stat. Undisp. Mat'l Facts, at 2 (Feb. 5, 2004) (03-D.I. 59). Vision therefore waived the "dispensing" argument because, as the Court recognized, "[m]uch of Ventana's evidence in support of its infringement arguments is uncontroverted." Mem. Order at 16 (Sept. 30, 2004) (03-D.I. 103). Accordingly, summary judgment of infringement was granted. *Id.* at 17. For over a year thereafter, knowing BioGenex's position in the Arizona action, Vision never retracted its concession that its devices perform the "dispensing" step.

Ventana sent a copy of the Arizona *Markman* Ruling to Vision on August 30, 2005, the day after it issued. Ex. E. At that time, knowing the Arizona court's ruling and the precise construction applied to the "dispensing" limitation, Vision still asserted no noninfringement

defense based on this limitation.  In fact, the declarant to Vision's present motion (Mr. Barrow) was deposed on September 6, 2005, Ex. F, but despite outstanding interrogatories directed to Vision's noninfringement contentions, Vision failed to disclose the defense or its intent to rely on Mr. Barrow's say-so as the basis.  It was not until the day before Vision filed its motion that it revealed its "inten[t] to file the Vision motion early afternoon tomorrow (EST)."  Ex. G.

      With both the Arizona appeal and Vision's motion pending, however, the parties recognized that judicial efficiency would not be best served by proceeding to trial in November 2005.  Accordingly, the parties have jointly requested the Court to vacate the trial date and related dates in the pending litigation.  *See* 03-D.I. 136; 05-D.I. 35.  The only issue that remains for the Court is Vision's motion for summary judgment based on collateral estoppel.  Ventana submits that collateral estoppel should not be applied to the Arizona *Markman* Ruling.  And even if it were permissible, it is well within the Court's discretion to defer a decision on the collateral estoppel question until after completion of the Arizona appeal.

      With virtually no factual record developed in this case on the "dispensing" issue, Vision seeks summary judgment on the basis of an erroneous *Markman* ruling subject to *de novo* review by the Federal Circuit.  Vision's motion invites a procedural morass, where judgment could be entered based on a ruling that may soon be reversed.  The prospect – indeed, likelihood – of such a predicament counsels against invoking collateral estoppel at this time.  *See, e.g., Micron*, 189 F. Supp. 2d at 213.  Until the appeal of the Arizona action is resolved, a judgment based on collateral estoppel is manifestly inappropriate:

> Thus, the Federal Circuit must assume that such [unappealed] *Markman* Orders will not have a preclusive effect.  As more than forty percent of all *Markman* Orders are reversed by the Federal Circuit, logic dictates that for these claim constructions to have a preclusive effect, the litigants must first have an opportunity to seek Federal Circuit review.

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 468 (W.D. Va. 2001).

### III.    VISION'S MOTION SHOULD BE DENIED BECAUSE COLLATERAL ESTOPPEL DOES NOT APPLY

####    A.    Collateral Estoppel Is Inappropriate Pending Appeal of the Arizona *Markman* Ruling

The glaring deficiency of Vision's motion is that it seeks to base collateral estoppel on a claim construction ruling that is in the process of being reviewed *de novo* by the Federal Circuit. Vision relies upon the general rule that a pending appeal does not defeat the binding effect of a lower court's ruling. *See* Pl. Memo. at 10-11. But it does not follow (and, to the knowledge of Ventana's counsel, the Federal Circuit has never held) that a *Markman* ruling can be the basis for collateral estoppel while an appeal of that ruling is pending.

The rule regarding preclusion by a judgment pending appeal has been stated as follows: "The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel, *unless the appeal removes the entire case to the appellate court and constitutes a proceeding de novo*." 1B JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.416 [3.-2] at III-322 to III-323 (2d ed. 1996) (emphasis added); *see also In re Laventhol & Horwath*, 139 B.R. 109, 114 (S.D.N.Y. 1992) ("pendency of an appeal does not suspend the collateral estoppel effect of an otherwise final judgment in federal practice *unless de novo review is permitted on appeal*") (emphasis added) (citation omitted).

Because *de novo* appellate review is pending, the Arizona *Markman* Ruling squarely fits this exception. The Federal Circuit states that "as a purely legal question, we review claim construction *de novo* on appeal." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). "The district court's claim construction, a matter of law on appeal, receives no deference from this court." *Nazomi Communs., Inc. v. ARM Holdings, PLC*, 403 F.3d 1364,

1367 (Fed. Cir. 2005). Accordingly, the *de novo* review exception to preclusion applies to

*Markman* rulings:

> Central States is correct in maintaining that pendency of an appeal does
> not defeat preclusion. However, an exception to the rule exists when the
> proceeding amounts to a trial *de novo*. Since the Federal Circuit makes
> determinations on legal issues such as claim interpretation *de novo*, this
> Court is not precluded [by another court's *Markman* ruling] from
> interpreting the claims.

*Moore N. Am., Inc. v. Adams Inv. Co.*, No. 99-CV-90376, 2000 U.S. Dist. LEXIS 20958, at *22

(S.D. Iowa July 27, 2000) (citations omitted); *see also Kollmorgen*, 147 F. Supp. 2d at 468

("logic dictates that for these [unappealed] claim constructions to have a preclusive effect, the

litigants must first have an opportunity to seek Federal Circuit review"); *cf. Micron*, 189 F.

Supp. 2d at 211 ("the Federal Circuit might reverse the claim construction of the Virginia court

shortly after this court grants summary judgment of non-infringement based on applying that

construction … awaiting the Federal Circuit's opinion appears both prudent and efficient").

    The premise of preclusion is that the underlying "judgment must ordinarily be a firm and

stable one." RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. a (2005). In modern patent

jurisprudence, however, judgments based on a district court *Markman* ruling are anything but

"firm and stable." *Markman* rulings are estimated to be reversed in about 40% of cases. *Cybor*,

138 F.3d at 1476 & n.4 (Rader, J., concurring) ("one study shows that the plenary standard of

review has produced reversal, in whole or in part, of almost 40% of all claim constructions since

*Markman I*"); *Kollmorgen*, 147 F. Supp. 2d at 468 ("more than forty percent of all *Markman*

Orders are reversed by the Federal Circuit"). Given the errors in the Arizona *Markman* Ruling

(*see* section III.B, *infra*) and the high likelihood of reversal, applying collateral estoppel in this

case can hardly be said to serve the interests of finality or judicial economy.

**B.** **Collateral Estoppel Is Inappropriate Because the**
**Arizona *Markman* Ruling Is Plainly Wrong**

The law recognizes circumstances where a prior judgment may be sufficiently unreliable such that the application of collateral estoppel is inappropriate. RESTATEMENT (SECOND) OF JUDGMENTS § 29(8) (2005). One such circumstance is where "the prior determination was plainly wrong." *Id.* § 29 cmt. j. That is the case with the Arizona *Markman* Ruling.

The Arizona *Markman* Ruling construed the "dispensing" limitation in the claims of the '861 patent: "dispensing the reagent in the reagent container onto the slide." Ex. A at 5. Instead of giving effect to the plain language of the claims, the Arizona court inserted an additional requirement, holding that the term "dispensing" means "direct dispensing." *Id.* at 16. The Arizona court also held that one type of dispensing, known as "sip and spit," was not within the literal scope of the term "dispensing." *Id.* This construction is contrary to the claim language, the patent specification, and the prosecution history. Indeed, the implausibility of the Arizona *Markman* Ruling is underscored by the fact that Vision did not even raise this "dispensing" argument in opposing Ventana's cross-motion for summary judgment of infringement. Because the Arizona *Markman* Ruling is "plainly wrong" (as Ventana expects the Federal Circuit to confirm), it cannot have collateral estoppel effect.[1] *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29(8) & cmt. j.

---

[1] Vision also suggests that statements in the Arizona *Markman* Ruling, relating to literal meaning and prosecution disclaimer, somehow imply that argument-based prosecution history estoppel should be applied to bar the doctrine of equivalents. Pl. Memo. at 10 n.5. Applying a preclusive effect with respect to the doctrine of equivalents, however, would violate the most basic requirement of collateral estoppel, that there be a "prior adjudication of an issue." RESTATEMENT (SECOND) OF JUDGMENTS § 13 (2005). The issue of prosecution history estoppel was neither briefed to nor decided by the Arizona court. Simply because Ventana did not elect to pursue doctrine of equivalents infringement in Arizona, given the Arizona *Markman* Ruling, does not mean that Ventana is precluded from doing so in this case.

1.      __The Language of the Claims__

The Federal Circuit affords "a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citation omitted). The claim construction inquiry "begins and ends in all cases with the actual words of the claim." *Id.* at 1324 (citation omitted). The language of the '861 patent claims in relevant part simply calls for "dispensing." Ex. H at 24:61 & 25:35. There is no claim language that limits "dispensing" to any particular sub-type of dispensing, such as "direct dispensing" or non-"sip and spit" dispensing. Thus, there is a "heavy presumption" that the claims cover all types of dispensing, whether direct or indirect.

The Arizona *Markman* Ruling disregarded that heavy presumption by grafting a "directly" modifier onto the term "dispensing." Such an approach improperly ignored the plain language of the claims. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone."); *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("For example, if an apparatus claim recites a general structure (*e.g.*, a noun) without limiting that structure to a specific subset of structures (*e.g.*, with an adjective), we will generally construe the claim to cover all known types of that structure that are supported by the patent disclosure.").

Even worse, the Arizona *Markman* Ruling imposed a claim construction that is contrary to the language of the claims. The "dispensing" step in claim 5 follows the "determining" step. Ex. H at 25:32-36. A determination is made as to the "sequence of reagents *to be applied*" to the slide. *Id.* at 25:32-34 (emphasis added). Once that determination is made, the step of "dispensing" is performed "based upon the sequence of reagents *to be applied*." *Id.* at 25:35-36 (emphasis added). Thus, the intent of the "dispensing" step is consistent with the ordinary

-8-

meaning of the claim language: to apply reagent to the slide.  The Arizona court's decision to ignore the "heavy presumption" in favor of ordinary meaning, as well as the context of the claims themselves, was plainly wrong.

### 2.    The Patent Specification

The patent specification provides context to the claims, and in some circumstances, the patentee may act "as his own lexicographer" to redefine the meaning of claim terms.  *SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1304 (Fed. Cir. 2003).  However, for the specification to limit the scope of the claims, there must be "words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."  *Id.* (citation omitted). The Arizona court erred in imposing a narrow construction of the term "dispensing," because there is no "clear disavowal of claim scope" in the patent specification.

The Arizona court used the patent specification to limit the claim language by pointing to figures and discussion that showed an exemplary embodiment of the '861 patent where direct dispensing was employed.  Ex. A at 7.  The Arizona court reasoned that the claims were limited to direct dispensing because the patent specification does not "suggest any alternative dispensing method."  *Id.*  This leap in logic was mistaken, as the Federal Circuit has explained:

> [T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.  Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  Thus, a single embodiment does not limit the scope of the claims *unless* there is a clear intent to narrow the claims.  However, the Arizona court applied this test in a backward fashion, by improperly implying an intent to narrow by virtue of a limited number of embodiments.  Because the

Arizona court violated the rule that "claims are not to be interpreted by adding limitations appearing only in the specification," its claim construction is plainly wrong. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The Arizona court further erred in its understanding of the patent specification, by assuming that the "invention as a whole" requires "direct" dispensing. Ex. A at 7. Contrary to the reasoning of the Arizona court, the mere fact that direct dispensing is described in some detail in the specification cannot limit the scope of the invention as a whole. It is well established that "[a] claim need not claim every function of a working device. Rather, a claim may specify improvements in one function without claiming the entire machine with its many functions." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed. Cir. 1999). Different claims may be directed to different inventions disclosed in the patent specification, and need not address every inventive aspect (such as direct dispensing) described in the specification. *Resonate Inc. v. Alteon WebSystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003) ("[W]ithout explicit claim language relating to the bottleneck problem, we see no reason why the invention as recited in claim 6 must include the bypass feature described in the written description as a solution to that problem.").

Here, the claims at issue generally call for dispensing reagent based on the automatic determination of which reagents to dispense. The patentee explained to the Patent Office that the claims are directed to an invention where "the automatic identification of the staining protocols and the automatic identification of the reagent containers work in combination to eliminate the need for operator input at the beginning of a staining run." Ex. J. at 12. The advantages of this automatic identification system are addressed by the steps of the '861 patent claims, but the step of "dispensing" is not further limited and simply requires that "reagent solution is applied to the

slide." *See, e.g.*, Ex. H at 20:15. It was plainly wrong for the Arizona court to conclude that all claims of the '861 patent must provide the advantages of direct dispensing.

### 3.    The Prosecution History

In the distantly-related '052 application,[2] the patentee distinguished the then-claimed requirement that reagent be "dispensable directly to a sample" from the indirect dispensing technique of "sip and spit." *See* Ex. I at 2 & 14. The Arizona court took these arguments to be a disclaimer of literal claim scope of the '861 patent. Ex. A at 11. This constitutes plain error.

Statements in the prosecution history can narrow the ordinary meaning of claim language only if there is "clear and unmistakable" evidence of disclaimer. *SunRace*, 336 F.3d at 1306. There is no such evidence with respect to the '861 patent. The claim language at issue in the '052 application called for reagent that was "dispensable directly to a sample." Ex. I at 2. By contrast, the language of the '861 patent claims *does not* call for direct dispensing. It only requires "dispensing the reagent." Ex. H at 24:61 & 25:35. Because the language of the '861 patent claims *differs* from the language of the then-pending claims of the '052 application, any disclaimer from the '052 application *cannot* be applied to the '861 patent. This principle was explained by the Federal Circuit in *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004). In that case, the defendant asserted that statements made about the patent's ability to rotate through 360° resulted in a disclaimer of rotation less than 360°. *Id.* at 1333. The Federal Circuit rejected this argument, explaining that the statements:

---

[2] U.S. Patent App. No. 07/924,052. The '861 patent issued from a continuation of a continuation of a continuation of a division of a continuation of the '052 application. *See* Ex. H at 1:6-10.

> were made to distinguish only those claims that explicitly recited a 360°
> limitation.  Claim 16, which issued as claim 11 now in dispute, has no
> such limitation.  These statements therefore do not rise to the level of a
> clear disavowal of scope with respect to pending claim 16.

*Id.*  The *Golight* decision is applicable here.  The statements about "sit and spit" were made to

distinguish only those claims that explicitly recited a "dispensable directly" limitation.  The

claims of the '861 patent have no such limitation, and therefore, cannot be limited by the alleged

disclaimer.

   The difference between the language of the '861 patent claims ("dispensing") and the '052

application ("dispensable directly") necessarily leads to the opposite conclusion from the one

reached by the Arizona court.  The patentee deliberately used the broader language ("dispensing")

when pursuing the '861 patent.  Where the patentee intended to claim direct dispensing in the

'052 application, it knew how to do so.  Because the patentee *did not* use that narrower language

in the '861 patent, the claims of the '861 patent cannot be so limited.  *See Phillips v. AWH Corp.*,

415 F.3d 1303, 1314 (Fed. Cir. 2005) ("To take a simple example, the claim in this case refers to

'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects

made of steel.").  The Arizona court was plainly wrong to apply the '052 application prosecution

history to materially different claim language in the '861 patent.  This Court should not infect the

present litigation with the errors found in the Arizona *Markman* Ruling.


IV.    **ALTERNATIVELY, VISION'S MOTION
       SHOULD BE DENIED AS PREMATURE**

   A settled record in the Arizona action is essential to provide this Court with a reliable

claim construction, and to avoid the waste and complication that would arise from basing a

judgment on a ruling that is likely to be reversed.  Accordingly, were collateral estoppel

otherwise appropriate (and it is not, *see* section III, *supra*), the most sensible course of action

would be to defer ruling on the collateral estoppel question pending resolution of the appeal.

This prudent approach has been recommended by courts and commentators alike. Thus, the RESTATEMENT (SECOND) OF JUDGMENTS explains that it may be "advisable for the court that is being asked to apply the judgment as res judicata to stay its own proceedings to await the ultimate disposition of the judgment in the trial court or on appeal. This course commends itself if the disposition will not be long delayed and especially if there is substantial doubt whether the judgment will be upheld." RESTATEMENT (SECOND) OF JUDGMENTS § 16 cmt. b (2005).

Deferring a ruling on collateral estoppel is particularly appropriate when the underlying judgment is based on a *Markman* order subject to *de novo* review, because *Markman* orders are frequently revised on appeal. This is the course taken by other courts that have considered the issue. In *Moore N. Am., Inc. v. Adams Inv. Co.*, the "distant sufficient" limitation of the '798 patent claims was construed in a Virginia action in a manner that resulted in summary judgment of noninfringement in favor of the defendant. 2000 U.S. Dist. LEXIS 20958, at *21. In an Iowa action, a different defendant sought to take advantage of the Virginia *Markman* ruling on the basis of collateral estoppel, while the appeal of the Virginia action was pending. *Id.* at *22. The Iowa court in *Moore* held that because the Virginia *Markman* ruling was subject to *de novo* review, collateral estoppel did not apply. It further determined that it would be prudent to stay the litigation pending the appeal of the Virginia action. *Id.* As it turned out, the Iowa court's approach *was* prudent, because the Federal Circuit modified the construction of the "distant sufficient" limitation on appeal. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1111 (Fed. Cir. 2000).

Similarly, in *Micron Tech., Inc. v. Rambus Inc.*, the "bus" and "read request" limitations of the '918 and '263 patents were construed in a Virginia action in a manner that resulted in judgment as a matter of law of noninfringement following the patentee's case in chief. 189 F. Supp. 2d at 206. In a Delaware action, a different defendant sought to take advantage of the

Virginia *Markman* ruling on the basis of collateral estoppel, while the appeal of the Virginia action was pending. *Id.* at 209. The Delaware court in *Micron* determined that deferring the collateral estoppel issue pending the Federal Circuit appeal "appears both prudent and efficient." *Id.* at 211. The court explained: Micron's "motion for summary judgment of non-infringement relies on the premise that this court will adopt the Virginia court's claim construction, even though that claim construction is currently the subject of Rambus's appeal to the Federal Circuit.... [T]he Federal Circuit might reverse the claim construction of the Virginia court shortly after this court grants summary judgment of non-infringement based on applying that construction.... [T]he *Infineon* appeal is likely to resolve several issues that may be dispositive in this action." *Id.* As it turned out, deferring the collateral estoppel issue *was* prudent and efficient, because the Federal Circuit vacated the noninfringement determination and found that the Virginia "district court erred in its construction of each of the disputed terms." *Rambus*, 318 F.3d at 1095.

Although deferring consideration of collateral estoppel is uniquely appropriate pending appeal of *Markman* rulings, due to the *de novo* standard of review, other types of patent cases have also been stayed pending appeal of related litigation. *See, e.g., Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044, 2005 WL 912184, at *2-3 (S.D.N.Y. April 19, 2005) (stay granted pending appeal of patent enforceability, inventorship and estoppel issues in related case); *Monsanto Co. v. Aventis Cropscience SA*, No. 00-1013-SLR, 2001 WL 640969, at *5 (D. Del. May 16, 2001) (stay granted pending appeal of patent standing issue in related case); *Morton Int'l, Inc. v. Atochem N. Am., Inc.*, No. 87-60-CMW, 1991 WL 98609, at *1 (D. Del. April 26, 1991) (stay granted pending appeal of validity and infringement issues in related case).

-14-

A.    **Legal Standards for Denying Summary Judgment**

The Court is entitled to "considerable deference" in a decision to deny summary

judgment.  *SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir.

1999).  Even if a party is otherwise entitled to summary judgment, its motion may be denied

"if policy considerations so warrant."  *Id.*  As commentators have explained, "even though the

summary-judgment standard appears to have been met, the court should have the freedom to

allow the case to continue when it has *any doubt* as to the wisdom of terminating the action prior

to a full trial."  10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728

at 525-26 (3d ed. 1998) (emphasis added).  In particular, summary judgment may be denied

where a "fuller development of the record" is desirable.  *Anderson v. Hodel*, 899 F.2d 766, 770

(9th Cir. 1990); *see also Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948) ("We consider it

the part of good judicial administration to withhold [summary] decision of the ultimate questions

involved in this case until this or another record shall present a more solid basis of findings based

on litigation or on a comprehensive statement of agreed facts.").  Furthermore, the Court has the

inherent power to control its docket and stay consideration of issues as appropriate.  *Landis v.*

*North Am. Co.*, 299 U.S. 248, 254 (1936).

B.    **Summary Judgment Should Be Deferred to Avoid**
       **a Judgment that Conflicts with the Federal Circuit**

It is "the ordinary rule allowing one federal court to stay litigation when another federal

court is in the process of deciding the same issue."  *Acton Corp. v. Borden, Inc.*, 670 F.2d 377,

383 (1st Cir. 1982).  For this reason, consideration of Vision's summary judgment motion should

be deferred until a more complete record is available from the Federal Circuit appeal.  The

opening appellate brief is expected to be filed this month, which means that the record on appeal

-15-

will be closed by the end of the year. *See* Fed. R. App. P. 31(a)(1); Fed. Cir. R. 31(a)(2). There

is no reason why this Court should prematurely race ahead of the appellate process.

     For this Court to adopt the Arizona *Markman* Ruling as its own, without the benefit of a

Federal Circuit ruling, is an invitation to a procedural nightmare. The best way to avoid the

procedural complexities is to defer ruling on the collateral estoppel issue:

> In some cases, litigants and the courts have collaborated so ineptly that the
> second judgment has become conclusive even though it rested solely on a
> judgment that was later reversed. *This result should always be avoided*,
> whether *by delaying further proceedings in the second action pending
> conclusion of the appeal in the first action*, by a protective appeal in the
> second action that is held open pending determination of the appeal in the
> first action, or by direct action to vacate the second judgment.... Even if
> these devices achieve full protection against the grotesque result of
> perpetrating a judgment that rests on nothing more than a subsequently
> reversed judgment, other costs remain.

18A Charles A. Wright et al., Federal Practice and Procedure § 4433 at 88-93 (2d ed.

2002) (emphasis added).

     **C.**    **Summary Judgment Should Be**
                **Deferred to Protect the Parties' Interests**

     The parties have already agreed to stay trial in this case until the appeal of the Arizona

action is completed. *See* Stip. [Prop.] Rev. Sched. Order ¶¶ 1 & 6 (03-D.I. 136; 05-D.I. 35).

Therefore, no party could be prejudiced by deferring ruling on the collateral estoppel issue. To

the contrary: it is in the parties' interest to permit this Court to have the benefit of the Federal

Circuit's decision on the "dispensing" issue.

     Vision may argue that it has an interest in resolving uncertainty created by this litigation.

Such an alleged interest cannot justify proceeding, blind to the likelihood that the Federal Circuit

will modify the Arizona *Markman* Ruling. If anything, premature action by this Court might

encourage third parties to unwittingly expose themselves to liability for patent infringement, not knowing that any judgment based on collateral estoppel is built on a house of cards.

Any "certainty" from a premature judgment based on collateral estoppel would be illusory, since such a judgment would ultimately need to be undone should the underlying ruling be reversed. This "certainty" argument was expressly considered and rejected in *Micron*. In that case, the court explained that the decision in the related litigation already would have whatever effect on the marketplace it was due, whether or not judgment was formally entered in the later litigation. "[I]t is difficult to understand how summary judgment of non-infringement based on collateral estoppel could do more to diminish the uncertainty than has already been done." *Micron*, 189 F. Supp. 2d at 211-12.

Vision may also argue that it has an interest in obtaining judgment in this case in order to press its case in a consolidated appeal before the Federal Circuit. This argument is also without merit. Vision is hardly entitled to independently press the "dispensing" argument before the Federal Circuit, when it failed to raise the argument in response to Ventana's cross-motion for summary judgment of infringement. *See Landrau-Romero v. Banco Popular de Puerto Rico*, 212 F.3d 607, 612 (1st Cir. 2000). Ventana long-ago set forth the reasons why the Vision Bond system performs the "dispensing" limitation in its cross-motion for summary judgment, and Vision never disputed the point. *See, e.g.*, Mem. Supp. Def.'s Cross-Mot. Summ. J., App. A, at 5-6 & 19 (Jan. 15, 2004) (03-D.I. 64). Rather, Vision agreed "that during operation of the Bond™ System reagents are dispensed onto slides." Pl.'s Resp. Def.'s Stat. Undisp. Mat'l Facts, at 2 (Feb. 5, 2004) (03-D.I. 59). Accordingly, summary judgment of infringement was entered. *See* Mem. Order (Sept. 30, 2004) (03-D.I. 103). Having expressly abandoned any "dispensing" argument, and having failed to otherwise develop any substantive record on the issue, Vision is in no position to interject itself into the ongoing appeal of the Arizona *Markman* Ruling.

-17-

Ventana sent a copy of the Arizona *Markman* Ruling to Vision on August 30, 2005, the day after it issued. Ex. E. The deposition of Mr. Barrow, the declarant to Vision's collateral estoppel motion, took place on September 6, 2005. Ex. F. Despite outstanding interrogatories directed to Vision's noninfringement contentions, Vision did not disclose the "dispensing" argument or its intent to rely on Mr. Barrow's say-so as the basis. Instead, Vision decided to lie in wait, hoping to take advantage of the Arizona ruling, but without committing itself to a position should its gambit fail.[3]

Ultimately, Vision filed its motion on less than one day's notice. Ex. G. It timed Mr. Barrow's declaration so that Ventana could not test it by cross-examination. It waited until after the close of fact discovery to produce the documents upon which the Barrow declaration is based. *Compare* Stip. Prop. Order ¶ 5 (Aug. 9, 2005) (05-D.I. 16) *with* Ex. K. On this undeveloped record, a second piecemeal appeal is manifestly inappropriate. The first piecemeal appeal of the Arizona action was necessitated by the glaring errors of the Arizona court. This Court should not amplify those errors by entering judgment based on an undeveloped record and a flawed claim construction.

---

[3] Because this Court already found that the Bond systems infringe claims 1 and 5 of the '861 patent, it necessarily applied a construction of "dispensing" that was broad enough to cover Vision's Bond system. (As for the Bond OCR, Vision admits that it "use[s] identical means for applying reagents to the slides." *See* Pl.'s Stat. Undisp. Facts Supp. Mot. Summ. J., ¶ 1 at 2 (Oct. 7, 2005) (03-D.I. 132; 05-D.I. 31).) Resolution of this issue predated the Arizona *Markman* Ruling by nearly a year. *See* Mem. Order at 17 (Sept. 30, 2004) (03-D.I. 103).

This Court is not obligated to defer to the later-in-time ruling by the Arizona court. The doctrine of collateral estoppel assumes that there is confidence that the underlying opinion is substantially correct. However, "[w]here a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted." RESTATEMENT (SECOND) OF JUDGMENTS § 29 cmt. f (2005). Thus, collateral estoppel may be denied effect where "[t]he determination relied on as preclusive was itself inconsistent with another determination of the same issue." *Id.* § 29(4); *see also Schwartz v. Upper Deck Co.*, 967 F. Supp. 405, 409 (S.D. Cal. 1997) ("Since this Court reached its decision prior to the Texas court's decision, collateral estoppel cannot be used to retroactively overrule a prior order of this Court."), *vacated on other grounds*, 104 F. Supp. 2d 1228 (S.D. Cal. 2000).

## V.    CONCLUSION

For the foregoing reasons, Ventana respectfully requests the Court to deny Vision's motion for summary judgment of noninfringement based on collateral estoppel.

Dated: October 21, 2005                            VENTANA MEDICAL SYSTEMS, INC.

By its attorneys,


          /s/ Roger J. Chin

Brian L. Michaelis (BBO #555159)
BROWN RUDNICK BERLACK ISRAELS, LLP
One Financial Center
Boston, Massachusetts  02111
(617) 856-8200

Ron E. Shulman (*pro hac vice*)
Roger J. Chin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304
(650) 493-9300

Nicole W. Stafford (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas  78759
(512) 338-5400

Jeffrey N. Danis (BBO #113880)
VENTANA MEDICAL SYSTEMS, INC.
1910 Innovation Park Drive
Tucson, Arizona  85737
(520) 229-3965